IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARK HENRY PANTLE,
      Plaintiff,

vs.                           Case No.:  3:12cv290/LAC/EMT

ERNIE LEE MAGAHA, et al.,
      Defendants.
_____ /

## REPORT AND RECOMMENDATION

This cause is before the court on Plaintiff's amended civil rights complaint, filed pursuant to 42 U.S.C. § 1983, and supporting memorandum with exhibits (docs. 13, 14). Plaintiff paid the filing fee.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Plaintiff, it is the opinion of the undersigned that dismissal of this action is warranted.

I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the federal Bureau of Prisons. He filed the initial complaint in this case on June 11, 2012 (doc. 1). The court reviewed the complaint pursuant to 28 U.S.C. § 1915A, noted several procedural and substantive deficiencies with regard to Plaintiff's claims, and directed Plaintiff to clarify his allegations in an amended complaint (doc. 9). Plaintiff filed an Amended Complaint on May 23, 2013 (doc. 13), and a supporting memorandum with exhibits (doc. 14).

In Plaintiff's Amended Complaint, which is the operative pleading in this case, he names the following persons as Defendants: Ernie Lee Magaha, former Clerk of Court in Escambia County Florida; Maryline Avila, Deputy Clerk of Court in Escambia County; Janet Holley, Escambia County Tax Collector; Richard Stone, Chief Operations Officer for the Tax Collector; Chris Jones,

Escambia County Property Appraiser; David Morgan, Escambia County Sheriff; T. Newton, a civil process server for the Escambia County Sheriff's Office; and Blue Goose Properties (doc. 13 at 1–3).[1] Plaintiff asserts he is suing each Defendant in his or her individual and official capacities (*see* doc. 14 at 5). He contends Defendants violated his due process rights guaranteed by the Fourteenth Amendment by selling his property at a tax sale while he was incarcerated (doc. 13 at 4–10; doc. 14 at 6–12). Plaintiff contends he was not adequately notified of the sale or afforded a hearing to voice his objections to the sale (doc. 13 at 10; doc. 14 at 12–16). As relief, he seeks cancellation of the tax sale and restoration of his ownership of the property (doc. 13 at 10). Alternatively, he seeks compensatory damages in an amount equal to the fair market value of the property, but not less than the tax assessed value of $42,000.00 (*id.*). He also requests punitive damages in the amount of $5,000.00 for "emotional stress" (*id.* at 11).

II.     PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that in 2004, he purchased property located at 1201 North 46th Avenue in Pensacola, Florida (doc. 14 at 6). He alleges he paid property taxes on the property for tax years 2004, 2005, and 2006; although he acknowledges he paid those taxes late (doc. 14 at 6, Ex. 11).[2] Plaintiff states he resided on the property until November 29, 2008, when he was arrested (doc. 14 at 6). He states on July 14, 2009, he was sentenced in federal court to 120 months of imprisonment, and in August of 2009 he was transferred to the Federal Correctional Institution in Talladega, Alabama ("FCI-Talladega"), where he remains incarcerated (doc. 13 at 2, 7; doc. 14 at 7). He states he did not complete a change of address form with the United States Postal Service, nor did he notify the Escambia County Tax Collector's office that his address had changed (doc. 13 at 4; doc. 14 at 7). Plaintiff states he instead arranged for Neal Summerford, his friend and "caretaker of the property," to retrieve mail sent to the property and forward it to him in prison (*id.*).

According to Plaintiff's exhibits, on May 30, 2008, prior to Plaintiff's arrest, Investments 2234, LLC, bought a tax certificate on Plaintiff's property for a face amount of $385.49 (doc. 14,

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

[2] The Tax Collector's records submitted by Plaintiff show that Denise Martin paid $119.66 for the 2004 property taxes on September 5, 2006; Neal Summerford paid $370.37 for the 2005 taxes on March 14, 2008; and Plaintiff paid $405.29 for the 2006 taxes on April 20, 2009 (doc. 14, Exs. 11, 12).

Ex. 10). Investments 2234, LLC, bought additional tax certificates on June 1, 2009 and June 1, 2010, for face amounts of $949.23 and $871.45, respectively (*id.*). The certificates (and related interest and fees) encumbered the property in a total amount of $2,563.42 (*see* doc. 14 at 8, Ex. 11). In July of 2010, Investments 2234, LLC, applied for a tax deed (doc. 14, Exs. 10, 11). Plaintiff alleges he did not receive notice of the application for a tax deed (doc. 13 at 4).

Plaintiff alleges on October 27, 2010, Mr. Summerford attempted to pay the taxes for "the longest standing tax year owed," but was advised that a total amount of $3,487.73 was required to redeem the property and prevent a tax sale (doc. 13 at 4–5, 8; doc. 14 at 7, Exs. 10, 12). This amount included $2,563.42 for taxes certificates for 2008, 2009, and 2010, plus interest and various fees (doc. 14, Exs. 1, 9, 10). Plaintiff states Mr. Summerford was directed to the Escambia County Clerk of Court's office for further inquiries, and at that time, Mr. Summerford told an employee of the Clerk of Court's office, identified as "HS" in the Clerk of Court's records, that Plaintiff was incarcerated and likely not able to pay the redemption amount (doc. 13 at 8; doc. 14 at 7, Ex. 1). Plaintiff alleges the following week, Mr. Summerford relayed all of this information to him and told him he was "uncertain what was going on" (doc. 13 at 5; doc. 14 at 7). Plaintiff alleges he sent correspondence to the Tax Collector's office, the Property Appraiser's office, and the Clerk of Court's office, inquiring as to the reason the redemption amount was nearly $3,500.00, when his annual property taxes were generally only $400.00, and he owed for only two or three years (doc. 13 at 15; doc. 14, Ex. 12). Plaintiff alleges his correspondence went unanswered (doc. 13 at 5).

Plaintiff alleges in November of 2010, another friend, Michael Trimble, accessed the property tax records on the internet and advised Plaintiff that the Property Appraiser's office determined that the property was not Plaintiff's homestead for taxable years 2008 and thereafter; therefore, Plaintiff was not entitled to a homestead exemption for those years, which increased the property taxes (doc. 13 at 5; doc. 14 at 8).

On December 2, 2010, Ms. Avila with the Clerk of Court's office, mailed a copy of the Notice of Application for Tax Deed to Plaintiff at the property's address, despite a notation on the Clerk of Court's "Tax Deed—Redemption Calculator" dated October 27, 2010, stating that Mr. Summerford advised that Plaintiff was incarcerated (doc. 13 at 8; doc. 14 at 8, Ex. 3). Plaintiff states Ms. Avila also mailed a copy of the Notice of Application for Tax Deed to the Financial Litigation

Unit of the United States Attorney's Office in Tallahassee, Florida, because the United States was a lienholder on the property (doc. 14 at 8, Ex. 3). The Clerk of Court also attempted to personally serve Plaintiff with the Notice by using a civil process server with the Escambia County Sheriff's Office (doc. 14, Ex. 4). The process server, T. Newton, executed a return of service stating, "1201 N. 46th Avenue is a vacant house. No additional information gained through due diligence efforts." (*id.*). A second return executed by Newton states he posted the Notice to the property on December 9, 2010, "per instructions from Clerk's Office" (doc. 13 at 8; doc. 14, Ex. 4).

On December 2, 9, 16, and 23 of 2010, the Clerk of Court's Office published Notice of Application for Tax Deed in The Escambia Sun-Press, LLC (doc. 14, Ex. 6).

Plaintiff alleges on December 10, 2010, he telephoned the Tax Collector's office and objected to the amount of tax owed and the removal of the homestead exemption (doc. 13 at 5–6, 9; doc. 14, Ex. 12). The Tax Collector's office employee responded that the matter was now in the hands of the Clerk of Court's office (*id.*). Plaintiff states he then spoke to the Clerk of Court's office, and was advised that the only way to stop the tax sale would be for him to pay $3,487.73 in full (*id.*). Plaintiff alleges he told the employee that he had only recently discovered the problem with the homestead exemption and property taxes, and that the holiday season was hindering his ability to borrow funds to stop the tax sale, but the employee responded that only payment in full would prevent the sale (*id.*). Plaintiff states the employee advised him that if the property was sold for more than the amount owed, he (Plaintiff) would have ninety (90) days to apply for the excess funds (*id.*).

Plaintiff further alleges that in correspondence dated December 12, 2010, which was three weeks prior to the tax sale, he and his "agent" notified the Tax Collector's office of the possibility that the homestead exemption had been removed in error (doc. 14 at 9).

On January 4, 2011, the property was sold to Blue Goose Properties, LLC, for $9,200.00 (doc. 14, Ex. 7). Defendant Magaha executed the tax deed, and Defendant Avila notarized Magaha's signature on the deed (*id.*). On January 5, 2011, the Financial Litigation Unit of the United States Attorney's Office in Tallahassee notified the Escambia County Clerk of Court's office of the payoff amount for a lien that had been imposed on the property by the United States as security for payment of a fine and special assessment Plaintiff was ordered to pay in his federal

criminal case, Case No. 3:09cr15 (doc. 14, Ex. 8). The U.S. Attorney's notification directed the Escambia County Clerk of Court to send payment to the United States District Court for the Northern District of Florida, earmarked with Plaintiff's name and Case No. 3:09cr15 (*id.*). The Escambia County Clerk of Court forwarded payment of $1,050.00 to the federal court on January 12, 2011, in satisfaction of the United States' lien, and notified Plaintiff of the payment via certified mail at FCI-Talladega (doc. 13 at 9; doc. 14, Ex. 8).

On January 24, 2011, Richard Stone, the Chief Operations Officer for the Tax Collector's Office, sent Plaintiff a letter at the federal prison where he was housed, stating that in response to Plaintiff's correspondence dated December 12, 2010, the Tax Collector's Office contacted Neal Summerford, who advised that Plaintiff believed he was erroneously denied the homestead exemption for 2008, and the error caused the large, unpaid tax bill (doc. 14, Ex. 5). Mr. Stone's letter advised Plaintiff that the Tax Collector's Office notified the Property Appraiser's Office of this information, and the Property Appraiser advised that the homestead exemption would not be restored for 2008, 2009, or 2010, and there was thus no basis to stop the tax deed sale (*id.*). Stone's letter advised Plaintiff to contact the Property Appraiser's Office for more information on the homestead exemption denial, and to contact the Clerk of Court if he desired information on the tax deed sale (*id.*).

On February 10, 2011, the Property Appraiser's office sent Plaintiff a letter at his institution stating the following:

> According to office records, your 2008 Homestead Exemption was removed. Your homestead receipt was returned by the postal service due to a forwarding order address change. A review of the public records listed in your name yielded various home addresses. This office maintained the property mailing address since we had not received an address update from you. A letter was mailed notifying you of the loss of your exemption. Further research also revealed the property had been rented which constitutes abandonment of homestead exemption per Florida Statute 196.061.

(doc. 14, Ex. 9).

III. ANALYSIS

Because Plaintiff is a prisoner seeking redress from a governmental entity or officer or employee or a governmental entity, the court may dismiss this case if satisfied that the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks

monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A. The language in this subsection "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," and thus dismissals for failure to state a claim are governed by the same standard as Rule 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). To survive § 1915A, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See* Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . . A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

Plaintiff contends his Fourteenth Amendment due process rights were violated because he was not given adequate notice prior to the sale of his property, and he was not afforded a pre-deprivation opportunity to have his objections heard at a "meaningful" time and in a "meaningful" manner (doc. 13 at 10). Plaintiff relies upon several Supreme Court cases in support of his due process claim, including Jones v. Flowers, 547 U.S. 220, 223, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006), Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950), Robinson v. Hanrahan, 409 U.S. 38, 40, 93 S. Ct. 30, 34 L. Ed. 2d 47 (1972), and Covey v. Town of Somers, 351 U.S. 141, 76 S. Ct. 724, 100 L. Ed. 1021 (1956) (doc. 14 at 12–16).

Before a State may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner "notice and opportunity for hearing appropriate to the nature of the case." Jones, 547 U.S. at 223 (quoting Mullane, 339 U.S. at 313). "Due process does not require that a property owner receive actual notice before the

government may take his property." <u>Jones</u>, 547 U.S. at 226 (citing <u>Dusenbery v. United States</u>, 534 U.S. 161, 170, 122 S. Ct. 694, 151 L. Ed. 2d 597 (2002)) (emphasis added). Rather, due process requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting <u>Mullane</u>, 339 U.S. at 314).

The Supreme Court has deemed notice constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent. *See, e.g.*, <u>Dusenbery</u>, 534 U.S. at 168–69; <u>Mullane</u>, 339 U.S. at 314. In <u>Dusenbery</u>, the Court held that due process was satisfied when the government sent a notice of forfeiture of the subject property to the claimant by certified mail to (1) the federal prison where the claimant was incarcerated, (2) the residence where the claimant's arrest occurred, and (3) an address in the town where the claimant's mother lived. 534 U.S. at 164, 172–73. <u>Mullane</u> involved a due process challenge to the constitutional sufficiency of notice to beneficiaries on judicial settlement of accounts by the trustee of a common trust fund established under state law. A trustee of such a common trust fund sought a judicial decree settling its accounts as against all parties having an interest in the fund. The only notice of the application for this decree was by court-ordered publication in a newspaper for four successive weeks. 339 U.S. at 309–10. The Supreme Court held that this notice was constitutionally defective as to known persons whose whereabouts were also known, because it was not "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 319; *see also id.* at 315 ("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it"). In <u>Dusenbery</u> and <u>Mullane</u>, the government attempted to provide notice and heard nothing back indicating that anything had gone awry, and the Supreme Court stated that "[t]he reasonableness and hence the constitutional validity of [the] chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected." <u>Mullane</u>, 339 U.S. at 315; *see also* <u>Dusenbery</u>, 534 U.S. at 170.

The Supreme Court has required the government to consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case. In <u>Robinson v. Hanrahan</u>, the Court held that notice of forfeiture

proceedings sent to a vehicle owner's home address was inadequate when the State knew that the property owner was in prison. 409 U.S. at 40. In <u>Covey</u>, the Court held that notice of foreclosure by mailing, posting, and publication was inadequate when town officials knew that the property owner was incompetent and without a guardian's protection. 351 U.S. at 146–47. Under <u>Robinson</u> and <u>Covey</u>, the government's knowledge that notice pursuant to the normal procedure was ineffective triggered an obligation on the government's part to take additional steps to effect notice. *See* <u>Jones</u>, 547 U.S. at 230. That knowledge was one of the "practicalities and peculiarities of the case" the Court took into account in determining whether constitutional requirements were met. *Id.* at 231 (quoting <u>Mullane</u>, 339 U.S. at 314–15).

In <u>Jones</u>, the Supreme Court addressed whether the Due Process Clause required the government to take additional reasonable steps to notify a property owner of a tax sale, when notice of the sale was sent to the owner's address of record by certified mail but returned "unclaimed." 547 U.S. at 225. The Court concluded that upon the government's obtaining knowledge that the owner had not received the notice, it should have taken "additional reasonable steps" to notify the owner, for example, sending the notice by regular mail addressed either to the named owner or to "occupant," or posting a notice on the front door. *Id.* at 234–35. However, the Court rejected the argument that the government was required to search for the owner's new address in the telephone book and other government records such as tax rolls. *Id.* at 235–36.

In the instant case, Plaintiff alleges he did not receive <u>written</u> notice of the tax sale prior to the sale, even though the Clerk of Court's office should have known to send the Notice of Application for Tax Deed to FCI-Talladega, because Mr. Summerford advised the Clerk of Court's office that Plaintiff was incarcerated on October 27, 2010. Additionally, Plaintiff's correspondence to the Clerk of Court in November of 2010 bore his FCI-Talladega address. Finally, the Clerk of Court sent notice of payment of the United States' lien to Plaintiff at FCI-Talladega just eight (8) days after the tax sale (doc. 13 at 9; doc. 14, Ex. 8).

The problem for Plaintiff is that he admits that in November of 2010 (after his conversations with Mr. Summerford and Mr. Trimble), he had <u>actual</u> notice that the homestead exemption had been removed, that a tax sale was pending, and that he could prevent the sale by redeeming the tax

certificate in the amount of $3,487.73.[3]  This was the same information he would have received had

the Notice of Application for Tax Deed been mailed to FCI-Talladega on December 2, 2010 (*see*

doc. 14, Ex. 6).  Furthermore, he received the information further in advance than he would have

received it through the County's standard notification procedure (*see* doc. 14, Exs. 4, 6).  Because

Plaintiff was sufficiently apprised of the specific information necessary to prevent the tax sale in

time to respond, due process was satisfied.  *See* United Student Aid Funds, Inc. v. Espinosa, 559

U.S. 260, 272, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) (rejecting creditor's due process challenge

to bankruptcy court's confirmation of debtor's bankruptcy plan where creditor received actual notice

of the filing and contents of the plan, even though debtor failed to notify creditor in compliance with

federal Bankruptcy Rules); Oneida Indian Nation of New York v. Madison Cnty., 665 F.3d 408,

432–36 (2d Cir. 2011) (counties' notices of tax enforcement proceedings provided Indian tribe with

sufficient notice of its due-process-protected right to redeem its properties from foreclosure and

enable it to take appropriate steps to protect property before redemption period expired, although

counties did not provide notice of redemption period's expiration date at beginning of redemption

period; tribe received actual notice of redemption period's expiration date well in advance of

expiration date, and did not suffer any injury from lack of earlier notice, to the contrary, notice that

tribe received enabled it to conduct vigorous defense of foreclosure proceedings); United States of

America (Drug Enforcement Agency) v. In re One 1987 Jeep Wrangler Automobile VIN

#2BCCL8132HBS12835, 972 F.2d 472, 482 (2d Cir. 1992) (where claimant responded to seizure

by filing notice of claim, he attests to the fact that he had received actual notice of the seizure;

constructive notice is not further required); *see also, e.g.,* In re:  Seizure of $143,265.78 from

Checking Account No. 1851349546 and $28,687.40 from Checking Account No. 1080022185, 384

F. App'x 471, 473–76 (6th Cir. 2010) (unpublished) (bank had actual knowledge of administrative

forfeiture of funds that government seized from two of its accounts when the account holders were

indicted for visa forgery and money laundering within sufficient time to file a timely claim, and,

thus, bank was not entitled to set aside the forfeiture on ground that it did not receive proper notice,

where the seized funds were in bank's possession, bank promptly contacted government about the

---

[3] Additionally, Florida Statutes § 194.171 placed Plaintiff on notice of the procedure for contesting tax assessments.

subsequent forfeiture, and government sent notice to bank at branch where the accounts were located).  According to the facts presented by Plaintiff, the government's failure to take additional steps to notify him of the tax sale, and its failure to provide him any additional opportunity to be heard, does not state a due process violation under the Fourteenth Amendment.

Therefore, it is respectfully **RECOMMENDED** that:

1.      This action be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted.

2.      The clerk be directed to close the file.

At Pensacola, Florida, this 16th day of October 2013.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**